**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Palm Beach Division**

LARRY KLAYMAN

                 Plaintiff,

    v.

BARACK HUSSEIN OBAMA, President
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

         and

MARCO RUBIO, United States Senator
4580 PGA Boulevard, Suite 201
Palm Beach Gardens, Florida 33418

         and

BILL NELSON, United States Senator
413 Clematis Street, Suite 210
West Palm Beach, Florida 33401

         and

PATRICK MURPHY, United States Congressman
2000 PGA Boulevard, Suite A3220
Palm Beach Gardens, Florida 33408

         Defendants.

Civil Action No.  9:15-cv-81023

**TRIAL BY JURY DEMANDED**

## COMPLAINT

      Plaintiff sues the Defendants, for himself and for other similarly-situated citizens of

the State of Florida, for declaratory judgment relief, injunctive relief, relief under *Bivens v.*

*Six Unknown Named Agents*, 403 U.S. 388 (1971), discrimination against his civil rights

under 42 U.S.C. § 1983  and specific performance of the U.S. Constitution, for deprivation of

their civil rights, constitutional rights, and protections provided for their security under the Constitution of the United States.  The Plaintiff brings this case for himself and others similarly situated because the Defendants gave away, abrogated and undermined his constitutional rights, putting him in danger, including the protections inherent in the Constitution requiring a two-thirds vote to ratify a treaty.  The Defendants had no authority to do so.  The Plaintiff seeks a declaratory judgment, specific performance and other remedies to restore the proper constitutional role in treaties and the constitutional and civil rights given to Plaintiff and the people.  As grounds therefore, Plaintiff alleges as follows:

## I.    <u>JURISDICTION AND VENUE</u>

1.  Jurisdiction exists pursuant to 28 U.S.C. § 1331 *et seq*. (federal question jurisdiction),

2.  While not exclusive, jurisdiction is also proper under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

3.  This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

4.  The Plaintiff and Defendants Bill Nelson, Marco Rubio and Patrick Murphy all have offices within this district and division and represent Plaintiff and others similarly situated in Congress.

## II.    <u>THE PARTIES</u>

5.  Plaintiff Larry Klayman is a citizen of the State of Florida, registered to vote in Florida, who in fact ran for election to the United States Senate from Florida in the past, and resides in Palm Beach County. He is an attorney active in the public interest and is the founder of Judicial Watch, Inc. and now Chairman and General Counsel of Freedom Watch, Inc.

6. Plaintiff's profession is to fight for ethics in government and to uphold the Constitution of the United States, thus protecting individual liberties and accountability under the rule of law for government officials.

7. The Plaintiff Larry Klayman is a Jewish Christian, and thus targeted by the government of the Islamic Republic of Iran and the terrorist organizations funded and armed by Iran for jihad and death. The fanatical Muslim extremists who control Iran do not distinguish in between killing Jews observing traditional Judaism from Jews who have accepted Jesus Christ as the Lord and Savior. Indeed, such militants also want to kill Christians almost as much as they want to kill Jews. For this reason, Iran has been developing nuclear weapons to annihilate Jews, Christians, the United States, where many Jews and Christians live, and the Jewish state of Israel.

8. Defendant Barack Hussein Obama is a resident of Illinois who has sworn to uphold and defend the Constitution of the United States and to defend the United States of America against all enemies foreign and domestic by undertaking to perform the duties of and to serve as President of the United States.

9. Defendant Bill Nelson is a citizen of Florida who has sworn to uphold and defend the Constitution of the United States and to defend the United States of America against all enemies foreign and domestic by undertaking to perform the duties of and to serve as a Senator of the United States representing the citizens of the State of Florida.

10. Defendant Marco Rubio is a citizen of Florida who has sworn to uphold and defend the Constitution of the United States and to defend the United States of America against all enemies foreign and domestic by undertaking to perform the duties of and to serve as a Senator of the United States representing the citizens of the State of Florida.

11. Defendant Patrick Murphy is a citizen of Florida who has sworn to uphold and defend the Constitution of the United States and to defend the United States of America against all enemies foreign and domestic by undertaking to perform the duties of and to serve as a Representative of the United States representing the citizens of the State of Florida and Palm Beach County.  Representative Murphy is the Congressman for the Congressional District in which the Plaintiff resides and represents the Plaintiff in the U.S. House of Representatives.

III.    **FACTS COMMON TO ALL COUNTS**

12. The "Iran Nuclear Agreement Review Act of 2015" which is Public Law No: 114-17 ("INARA")  violates Article II, Section 2, Paragraph 2 of the Constitution by changing the method and radically altering the requirements by which treaties are ratified, who ratifies treaties, and the voting requirements to do so.

13. On May 22, 2015, Barack Hussein Obama, undertaking the duties to the Plaintiff as a citizen of Florida of President of the United States signed INARA into law, in violation of his constitutional responsibilities and in derogation and disregard of the Plaintiff's rights as a citizen, civil rights, liberty, and legal protections.

14. Marco Rubio, undertaking the duties to the Plaintiff as a citizen of Florida of a U.S. Senator, voted in favor of passage of INARA on May 7, 2015, in violation of his constitutional responsibilities and in derogation and disregard of the Plaintiff's rights as a citizen, civil rights, liberty, and legal protections.

15. Bill Nelson, undertaking the duties to the Plaintiff as a citizen of Florida of a U.S. Senator, voted in favor of passage of INARA on May 7, 2015, in violation of his

constitutional responsibilities and in derogation and disregard of the Plaintiff's rights as a

citizen, civil rights, liberty, and legal protections.

16. Patrick Murphy, undertaking the duties to the Plaintiff as a citizen of Florida of a U.S.

Congressman, voted in favor of passage of INARA on March 17, 2015, in violation of his

constitutional responsibilities and in derogation and disregard of the Plaintiff's rights as a

citizen, civil rights, liberty, and legal protections.

17. The U.S. Constitution requires:

> The Senators and Representatives before mentioned, and the
> Members of the several State Legislatures, and all executive and
> judicial Officers, both of the United States and of the several
> States, shall be bound by Oath or Affirmation, to support this
> Constitution;

Article VI, Paragraph 3 of the U.S. Constitution.

18. The Constitution provides and requires that

> He *[the President]* shall have Power, by and with the Advice and
> Consent of the Senate, to make Treaties, provided two thirds of the
> Senators present concur; …

Article II, Section 2, Paragraph 2, Constitution.

19. The Constitution was designed, created, established, and ratified as the Constitution of

the United States in part for the purpose of protecting citizens in their political rights,

common defense, domestic tranquility, justice, and common welfare.

20. The requirement that a treaty must be ratified by the U.S. Senate by the votes of two-

thirds of Senators present is an essential constitutional protection to the rights and

security of the citizens of Florida, including protecting their liberty against the

encroachments of government and/or tyranny and protecting them against the dangers of

foreign threats to the United States.

21. The Plaintiff and other citizens similarly situated are in great danger as a result of the Defendants' actions contravening the Constitution.

22. The creation of a treaty is of extraordinary importance to the constitutional rights and civil rights of the Plaintiff, to his liberty, political and citizen rights, and protections because a treaty is given the status of "supreme law of the land" under the Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and ***all Treaties made***, or which shall be made, under the Authority of the United States, ***shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding***.

Article VI, Paragraph 2 *(Emphasis added)*.

23. Accordingly, the power to make a treaty can have a profound and dangerous effect upon the constitutional, political, legal, and civil rights of the citizens of the United States.

24. The dangers inherent in entering into a treaty make the ratification process and voting requirement of central importance to the Constitution's protections.

25. In fact, Defendant Barack Obama has actually entered into a treaty with Iran, which was publicly announced on July 13, 2015, by U.S. Secretary of State John Kerry.

26. Defendant Obama's new July 13, 2015, treaty between the United States and Iran implicitly amends the multi-party, international Nuclear Non-Proliferation Treaty, [1] which the United States signed on July 1, 1968, and the United States Senate ratified on March 13, 1969.

---

[1]   Accessible from the U.S. State Department's website at http://www.state.gov/t/isn/trty/16281.htm

27. The Islamic Republic of Iran also signed the Treaty on the Non-Proliferation of Nuclear Weapons on July 1, 1968. [2]

28. Thus, a treaty already existed between Iran and the United States since July 1, 1968, that had been previously ratified by the U.S. Senate, although also being a multi-party treaty among many nations, before Defendant Obama entered into a new treaty in July 2015.

29. Congress can override a treaty by statute or by ratifying another treaty.

30. However, a President cannot lawfully override or amend a treaty simply by issuing an order, even if he calls it an Executive Order or some other form of international agreement.

31. The previously-existing treaty between Iran and the United States on the same subject, the 1968 Treaty on the Non-Proliferation of Nuclear Weapons, having been duly and properly ratified by a two-thirds vote in favor by the U.S. Senate, cannot now be constitutionally modified by the Defendants without complying with the treaty ratification process provided in Article II, Sec. 2, Par. 2 of the U.S. Constitution.

32. INARA cannot authorize a new treaty to supplant a previously treaty properly ratified under the U.S. Constitution by a method different from provided in the U.S. Constitution.

33. Giving away American sovereignty in derogation of Plaintiffs' rights, the Obama Administration filed a resolution with the United Nations ("U.N.") to approve Obama's negotiated treaty with Iran.

34. The U.N. voted to approve Obama's treaty with Iran on Monday, July 20, 2015, before the Congress has had an opportunity to vote on the treaty even under the INARA procedure alternative to the Constitutional procedure for treaty ratification.

---

[2]     United Nations Office for Disarmament Affairs website, accessible at http://disarmament.un.org/treaties/t/npt

35. Obama's negotiated treaty with Iran will "wreak havoc" across the Middle East, Prince

   Bandar bin Sultan, Saudi Arabia's ambassador to the United States for nearly 25 years,

   wrote in an Arabic-language op-ed (opinion editorial column) in *Elaph*,[3] as *The*

   *Washington Post* translated and reported.[4]

36. Badar suggests that President Obama is knowingly making a bad deal, while President

   Bill Clinton had made a deal. This Obama negotiated deal will "wreak havoc" in the

   Middle East, which is already destabilized due to Iranian actions, Bandar writes.

37. Barack Obama's treaty with Iran is extremely dangerous to the Plaintiff and the United

   States because under the treaty – if it is ratified to become legally valid – the U.S.

   government will release to Iran assets now valued at $150 billion which assets were

   frozen and held due to acts of war committed by Iran starting in 1979 against the U.S.

   Embassy, U.S. Government employees and citizens, and the United States generally.

   That $150 billion in funding, plus unrestricted oil sales, will finance terrorism and

   warfare against the United States and the development of nuclear weapons, placing the

   Plaintiff and the United States and its allies like Israel in imminent danger.

38. Obama's negotiated treaty will directly threaten the safety of the Plaintiff and others

   similarly situated by removing sanctions upon companies doing business with Iran and on

   the sale of Iranian oil worldwide.  Those sanctions were in place to discourage the

---

[3]      Arabic language news site, accessible, at:
http://elaphjournal.com/Web/News/2015/7/1024259.html
[4]      Adam Taylor, "Saudi Prince Bandar: The U.S. nuclear pact with North Korea failed. The
Iran deal is worse.," The Washington Post, July 16, 2015, accessible at:
https://www.washingtonpost.com/blogs/worldviews/wp/2015/07/16/saudi-prince-bandar-says-
iran-nuke-deal-worse-than-failed-north-korea-deal/?wprss=rss_world

development of nuclear weapons by Iran, including to restrict the financing available for Iran to use in building nuclear weapons. [5]

39. In return for these and other benefits, Obama's negotiated treaty requires of Iran only unenforceable and unverifiable promises restricting development of nuclear technology which, as mere illusions, will do more harm than good. The illusory promises in Obama's negotiated treaty with Iran will interfere with genuine efforts to protect the nation and thus Plaintiff from the dangers by disguising and hiding the dangers.

40. In response to the treaty negotiated by Defendant Barack Obama, Defendant Marco Rubio – after having voted for the INARA and its provisions – is raising money as campaign donations by campaigning against the treaty that Obama has negotiated.

41. If INARA is not struck down or declared as unconstitutional, the treaty negotiated by Obama will become ratified as a legal treaty without complying with the treaty ratification provision of Article II, Sec. 2, Par. 2 of the Constitution.

42. Urgent action is required in this case and expedited treatment is requested because Defendant Obama will submit his treaty negotiated with Iran to the Congress pursuant to INARA imminently and the Congress will have only about 60 days in which to vote under INARA on Obama's Iran treaty. By contrast, under the normal governing rules under Article II, Sec. 2, Par. 2 of the Constitution, the U.S. Senate would not be under any deadline to act. Thus, it is only the INARA that creates the urgency and striking INARA down as unconstitutional will remove the deadline.

---

[5]     Iran possesses some of the largest reserves of oil in the world.  Oil offers cheaper energy than nuclear power.   Iran is located geographically to effectively take advantage of solar electric power cells, which require vastly smaller capital investments than nuclear power plants. Therefore, Iran's pretense of developing nuclear power for civilian use is not credible.

43. However, President Obama's Under Secretary of State for Political Affairs Wendy Sherman told journalists [6] on Thursday, July 16, 2015, that that the Obama administration does not have time to wait on Congress, and that Obama's treaty negotiated with Iran must first be submitted to the U.N. for an endorsement, explaining that the administration cannot simply say "well excuse me, the world, you should wait for the United States Congress."

44. Leaders of the Senate Foreign Relations Committee, Chairman Bob Corker (R-Tenn.) and Ranking Member Ben Cardin (D-Md.), have written a letter [7] to President Barack Obama demanding that he allow Congress to review the deal first and expressing their united concern that the administration would permit the U.N. to vote before Congress. The passage of INARA clearly signaled that the Congress demanded a role in the treaty process, which Defendant Obama is also violating.

45. As we are reminded by the Supreme Court in, for example, *INS v. Chadha*, 462 U.S. 919, 957-959 (1983), the exact structure, checks and balances, details, and design of the Constitution are very important and integral parts of the protections afforded to all the citizens of the United States.

46. The Supreme Court teaches us that the requirement of a two-thirds vote in the U.S. Senate to ratify a treaty is an integral part of the "***precautionary alternative checks***" built into the constitutional structure and architecture for the protection of U.S. citizens:

> Although the bicameral check was not provided for in any of these provisions for independent congressional action, ***precautionary alternative checks are evident***. For example, Art. II, § 2, requires ***that two-thirds of the Senators present concur in the Senate's***

---

[6]     Video record of Wendy Sherman's remarks, State Department Daily Briefing , July 16, 2015, accessible at:  http://www.c-span.org/video/?327147-1/state-department-briefing
[7]     Accessible at: http://salsa4.salsalabs.com/dia/track.jsp?v=2&c=LNsHI11hl7XJrO5PUh7IsnFxw3pPjwio

> *consent to a treaty*, rather than the simple majority required for
> passage of legislation. *See* The Federalist No. 64 (J. Jay); The
> Federalist No. 66 (A. Hamilton); The Federalist No. 75 (A.
> Hamilton).

*INS v. Chadha*, 462 U.S. 919, Footnote 21 (1983)

47. In *Chadha*, an individual private person Jagdish Chadha, a foreign exchange student, not

    even a citizen of the United States, challenged a legislative structure that deviated from

    the constitutional structure and architecture.

48. The Supreme Court agreed with Chadha that the Congress must follow the procedures

    spelled out in the Constitution and that legislative inventions contrary to the

    constitutional pattern – there, passage by both houses of Congress and presentment to the

    President for signature or veto – were unconstitutional and void:

> … To preserve those checks, and maintain the separation of
> powers, the carefully defined limits on the power of each Branch
> must not be eroded. …
>
>          * * *
>
> The choices we discern as having been made in the Constitutional
> Convention impose burdens on governmental processes that often
> seem clumsy, inefficient, even unworkable, but those hard choices
> were consciously made by men who had lived under a form of
> government that permitted arbitrary governmental acts to go
> unchecked. There is no support in the Constitution or decisions of
> this Court for the proposition that the cumbersomeness and delays
> often encountered in complying with explicit constitutional
> standards may be avoided, either by the Congress or by the
> President. See *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U. S.
> 579 (1952). With all the obvious flaws of delay, untidiness, and
> potential for abuse, we have not yet found a better way to preserve
> freedom than by making the exercise of power subject to the
> carefully crafted restraints spelled out in the Constitution.

*Id.*  And the Supreme Court further teaches us that:

> (d) *The Senate alone was given unreviewable power to ratify
> treaties* negotiated by the President. Art. II, 2, cl. 2.

> Clearly, when the Draftsmen sought to confer special powers on one House, independent of the other House, or of the President, they did so in explicit, unambiguous terms

462 U.S. at 955 *(Emphasis added.)*

49. Accordingly, the constitutional requirement that treaties must be ratified by the U.S. Senate and then only upon the unusual voting requirements of two-thirds of Senators present is a precise, clear, explicit, targeted, significant, and potent component of the constitutional checks and balances, design, and architecture, which cannot be disregarded or swept aside.

50. As a result, a device, invention, or scheme which departs from, changes, or disregards the constitutional requirement of Article II, Sec. 2, Par. 2, of the Constitution – even in legislation validly enacted by the U.S. Congress – is unconstitutional and void under the same analysis previously applied by the Supreme Court.

51. The ruling of *Chadha* over-turned dozens of statutes which all used the same scheme – very popular with Congress – of allowing one house to veto actions by the Executive Branch pursuant to previously-enacted legislation.  The popularity of those statutes struck down with Congress did not stop the federal courts from doing their duty and upholding the Constitution.  The fact that dozens of statutes were struck down as unconstitutional did not give the federal courts pause from doing their sacred duty to defend and protect the  Constitution so help them God.  The federal courts put the integrity of the Constitution and its legal protections and safeguards of liberty above personal comfort or acclaim.

52. As a result, INARA is unconstitutional, invalid, and void, because among its central and non-severable provisions INARA --

    a.   Changes the process by which treaties or international agreements may be made valid or ratified,

    b.   Changes the identity of the government body which may ratify a treaty from the U.S. Senate to the entire U.S. Congress, both houses acting together in unison,

    c.   Changes the process of ratification so that a treaty automatically becomes ratified if the U.S. Congress does nothing or fails to agree among both houses, so that inaction is now treated as ratification,

    d.   Changes the vote total required for ratification from two-thirds of the U.S. Senators present required for ratification to a majority of both houses required to effect disapproval, but

    e.   Changes the ratification process to (apparently) allow the President to veto a vote of disapproval, and

    f.   Changes the ratification process from requiring a two-thirds vote of U.S. Senators present for ratification to (apparently) require a three-quarters vote of both houses to over-turn a veto by the President of a vote of disapproval.

53. No other power is conferred upon the President of the United States under the U.S. Constitution to make any other species of agreement with foreign countries without strictly complying with the treaty-making provision of Article II, Sec. 2, Par. 2.

54. Despite the consensus understanding that a president has broad authority in foreign policy, no authority exists to bind the United States in international relations aside from the treaty ratification process under Article II, Sec. 2, Par. 2.

55. Nothing in the Constitution supports a President evading the requirements of Article II, Sec. 2, Par. 2 by characterizing a treaty as some other species of international agreement or grounding an agreement with a foreign country on some other Constitutional power than that in Article II, Sec. 2, Par. 2.

56. Meanwhile, similarly INARA also violates the Constitution by altering the Constitutional process by which the U.S. Congress enacts legislation and presents it to the President for signature or veto.

57. INARA presumes to dictate to the U.S. Congress what legislation may be called (how titled), how it must be handled by particular committees of the U.S. Congress, and how the U.S. Congress must handle the legislation.

58. Specifically, if the U.S. Congress wishes to re-institute sanctions on Iran upon a discovery of violations by Iran of President Obama's treaty concerning Iran's nuclear weapons development programs, INARA dictates how the U.S. Congress may go about enacting such legislation, what it must be called (titled), which committees may entertain the legislation, how the committees and each house must handle the legislation, etc.

59. Each house of the U.S. Congress is the master of its own rules and cannot be so ruled or governed by legislation negotiated with and signed by the President or even dictated by the other house:

60. "Each House may determine the Rules of its Proceedings,"  Article I, Section 5, Paragraph 2,  Constitution.

61. Even though here the U.S. Congress enacted INARA, each house and its committees have the right to govern themselves and conduct their own proceedings and set their own procedures.

62. Thus, this session of Congress or a future session of Congress would normally vote on the progress of legislation through the committee structure and the handling of legislation, but INARA over-rules the U.S. Congress – perhaps a future session of Congress – and dictates how Congress may handle legislation reinstating sanctions on Iran.

63. As a result, Obama's dangerous negotiated treaty will provide to Iran $150 billion immediately, the income from unrestricted sales of oil, and the income from unrestricted commerce by waiving sanctions designed to prevent Iran's development of nuclear weapons and traffic in other arms.

64. As a result, the Plaintiff as a Christian Jew will be personally endangered by terrorist organizations funded and armed by Iran using the $150 billion in assets, oil sales, and increased commerce who have openly declared their determination to kill all Jews.

65. As a result, the Plaintiff as a Christian Jew, including as a periodic visitor to Israel, will be personally endangered by Iran's development of nuclear weapons using the $150 billion in assets, oil sales, and other commerce given to Iran by Obama's negotiated treaty, developed for the purpose of being covertly smuggled into infidel nations, such isolated areas of Florida's shoreline, and detonated in major U.S. cities.

66. As a result, the Plaintiff will also be personally harmed by the increasing rise in anti-Semitism in the Western world, fueled by Western societies increasingly intimidated by the growing power of terrorist groups and state sponsors of terror like Iran as Iran becomes vastly more powerful and richer and develops nuclear weapons.

67. The Plaintiff's injuries, including the deprivation of his legal rights and legally protected vested property and other rights, are proximately related to the illegal conduct of

Defendants, each and every one of them, jointly and severally as pled herein with specificity.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Declaratory Judgment*

68. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

69. Defendant asks the Court to issue Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that INARA is unconstitutional.

70. Pursuant to 28 U.S.C. § 2201, declaratory judgment under federal law is available "In a case of actual controversy within its jurisdiction," such that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Moreover, "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."   *Id.*

71. Here, there is an actual controversy as to whether the INARA legislation can legally and validly change the procedures set forth in the Constitution for ratifying a treaty (thus creating a treaty as a legal instrument).

72. The Plaintiff asks that the Court declare the rights and other legal relations of the Plaintiff as an interested party seeking such declaration, concerning whether the treaty negotiated by Obama can become a valid legal treaty under the authority of INARA without complying with the treaty ratification process of Article II, Sec. 2, Par. 2 of the Constitution.

73. As a result, INARA is unconstitutional, null, and void and must be struck down as null and void by Declaratory Judgment.

## SECOND CAUSE OF ACTION
### *Violation of the Treaty Ratification Process of the U.S. Constitution*

74. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

75. The Plaintiff asks that the Court enforce the requirements of the treaty ratification process under Article II, Sec. 2, Par. 2.

76. The Plaintiff seeks specific performance under the  Constitution of the treaty-ratification process set forth in Article II, Sec. 2, Par. 2.

77. For example, the Supreme Court has made clear that the Take Care Clause is judicially enforceable, in past cases chiefly involving presidential invocations of the dispensing power. *See, e.g.*, *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 612-13 (1838); *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945).

78. Similarly, the Supreme Court struck down legislation as unconstitutional in *INS v. Chadha*, 462 U.S. 919, 957-959 (1983) upon the request of a non-citizen private individual.

79. In this case, the Defendants have knowingly and explicitly by their enactment of INARA changed the treaty-ratification process of Article II, Section 2, Paragraph 2 to a new process incompatible with the U.S. Constitution.

80. The Defendants have also knowingly and explicitly by their enactment of INARA changed the process by which the U.S. Congress enacts legislation.

81. Accordingly, the Defendants' actions violate the treaty-ratification provision f Article II, Sec. 2, Par. 2 which must be enforced.

82. As a result, INARA is unconstitutional, null, and void and must be struck down as null and void.

## THIRD CAUSE OF ACTION
### *Fifth Amendment Violation*
*(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

83. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

84. Plaintiff and those similarly situated enjoy a liberty interest in their persons of not being deprived of life by actions of the Defendants without due process of law, as guaranteed by the Fifth Amendment to the  Constitution.

85. The Defendants have placed the Plaintiff and others similarly-situated in danger of death and bodily injury by allowing Obama's treaty negotiated with Iran to become a valid treaty, thus releasing $150 billion of assets frozen and held by the U.S. Government to be used by Iran to finance terrorism, warfare, and attacks against the Plaintiff within the U.S. homeland, including by Iran as a sponsor of terrorism using the $150 billion released under the treaty ratified pursuant to INARA to finance terrorism against the United States by various other terrorist groups and nations, allowing the development of nuclear weapons by Iran, and allowing Iran or other terrorist groups acting secretly in concert with Iran to smuggle nuclear weapons into the United States.

86. The violations of this liberty interest are actionable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

87. Defendant Barack Obama, Defendant Bill Nelson, and Defendant Marco Rubio, and Patrick Murphy and each and every one of them, acting in their personal and official capacities, violated the constitutional rights of the Plaintiff and those similarly situated by intentionally violating the rights of all those within the United States.

88. By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiff has suffered harm in the form of having his constitutional, civil, and political and other rights violated under the due process clause of the Constitution.

89. As a result, INARA is unconstitutional, null, and void and must be struck down.

### FOURTH CAUSE OF ACTION
*42 U.S.C. 1983 Civil Rights*
*Against Only Defendant Barack Obama*

90. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

91. The Defendant Barack Obama's actions and their omissions with regard to their duties to act constitute knowing and intentional deprivation in government action of the Plaintiff's civil rights, constitutional rights, and due process protections.

92. As a Jew, though practicing as a Christian, the Plaintiff is a member of a religious minority and an ethnic minority.

93. The Plaintiff is being discriminated against in relation to his religious and ethnic status by being endangered with death, physical, harm and oppression by the consequences of INARA and the resulting Obama negotiated treaty with Iran.

94. The Supreme Court just reiterated, clarified, and expanded that a discriminatory effect, even if not intentional, constitutes illegal discrimination due to the resulting disparate impact on an ethnic or religious or other minority, in the case of *Texas Department of*

*Housing and Community Affairs v. The Inclusive Communities Project*, Case No. 13–1371, decided in June 25, 2015.

95. Nevertheless, the Defendant Barack Obama has acted and is acting with invidious prejudice toward the Plaintiff as a Jew and even as a Christian due to the Defendant Obama's childhood experiences being raised as a Muslim like his father, as confirmed by his childhood classmates recalling his strong devotion to Islam.

96. By the acts and omissions of the Defendant Barack Obama described above, the Defendants deprived the Plaintiff of his constitutional rights to equal protection of the laws and equal privileges guaranteed by the Fourteenth Amendment to the Constitution.

97. At all times relevant to this Complaint, the Defendant Barack Obama acted willfully and intentionally to violate the Plaintiff's civil and constitutional rights and/or with reckless disregard of whether their conduct violated the Plaintiff's civil and constitutional rights.

98. In the actions described above, the Defendant Barack Hussein Obama violated the provisions of 42 U.S.C. 1983 to the injury of the Plaintiff.

99. The Defendant Barack Hussein Obama has conspired with persons and entities not named as Defendants here, including the leaders of Iran, to violate the civil and constitutional rights of the Plaintiff and in so doing violated the provisions of 42 U.S.C. 1983 and 1985 to the injury of the Plaintiff.

**FIFTH CAUSE OF ACTION**
*First Amendment Violation*
*(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

100.     Plaintiff repeats and re-alleges each and every allegation of the foregoing

paragraphs as if fully set forth herein.

101.     Defendant Barack Hussein Obama, Defendant Bill Nelson, Defendant Marco

Rubio, Defendant Patrick Murphy, each and every one of them, acting in their personal

and official capacities, abridged and violated Plaintiff's due process rights under the First

Amendment to the Constitution relating as a religious and ethnic minority.

102.     The conduct of the Defendants is creating discrimination and a disparate impact

against the Plaintiff as a religious and ethnic minority for the reasons set forth above.

103.     These violations are compensable under *Bivens v. VI Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

104.     By reason of the wrongful conduct of the Defendants, each and every one of

them, jointly and severally, Plaintiff has suffered harm in the form of having his due

process rights violated, guaranteed to Plaintiff under the Constitution.

105.     As a result, INARA is unconstitutional, null, and void and must be struck down.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, each and every one of

them, that the legislation "The Iran Nuclear Agreement Review Act of 2015" which is Public

Law No: 114-17 be struck as unconstitutional, null, and void, for injunctive relief, for declaratory

judgment, equitable relief, specific performance, actual and compensatory damages, attorneys'

fees and costs and such other relief as the Court may find just and proper, including an order

enjoining the implementation of any international agreement or action of the Government

relating thereto which is not ratified as a treaty pursuant to Article II, Section 2, Paragraph 2 of

the Constitution.

## **<u>JURY DEMAND</u>**

**Plaintiff respectfully demands a jury trial on all issues so triable.**

Dated:  July 23, 2015

Respectfully submitted,

 */s/ Larry Klayman*
Larry Klayman, Esq.
FL Bar No. 246220
7050 W Palmetto Park Rd.
Unit 15-287
Boca Raton, FL 33433
(310) 595-0800
leklayman@gmail.com