UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-81023-CIV-MARRA

LARRY KLAYMAN,

    Plaintiff,

vs.

BARACK HUSSEIN OBAMA, President
1600 Pennsylvania Avenue, N.W.
Washington, D.C.  20500,

and

MARCO RUBIO, United States Senator
4580 PGA Boulevard, Suite 201
Palm Beach Gardens, Florida 33418,

and

BILL NELSON, United States Senator
413 Clematis Street, Suite 210
West Palm Beach, Florida 33401,

and

PATRICK MURPHY, United States Congressman
2000 PGA Boulevard, Suite A3220
Palm Beach Gardens, Florida 33408,

    Defendants.
_____/

## ORDER AND OPINION DISMISSING CASE

**THIS CAUSE** is before the Court *sua sponte*.  Plaintiff has filed a Complaint, for himself and for other similarly-situated citizens of the state of Florida, seeking both declaratory judgment and injunctive relief for "discrimination against his civil rights

under 42 U.S.C. § 1983 and specific performance of the U.S. Constitution, for deprivation of their civil rights, and protections provided for their security under the Constitution of the United States." DE 1 at 1-2. Specifically, Plaintiff alleges that

- "The 'Iran Nuclear Agreement Review Act of 2015' which is Public Law No: 114-7 ("INARA") violates Article II, Section 2, Paragraph 2 of the Constitution by changing the method and radically altering the requirements by which treaties are ratified, who ratifies treaties, and the voting requirements to do so." Compl. ¶ 12.

- "The Plaintiff and other citizens similarly situated are in great danger as a result of the Defendants' actions contravening the Constitution." Compl. ¶ 21.

- "Barack Obama's treaty with Iran is extremely dangerous to the Plaintiff and the United States because under the treaty – if it is ratified to become legally valid – the U.S. government will release to Iran assets now valued at $150 billion which assets were frozen and held due to acts of war committed by Iran starting in 1979 against the U.S. Embassy, U.S. Government employees and citizens, and the United States generally.  That $150 billion in funding, plus unrestricted oil sales, will finance terrorism and warfare against the United States and the development of nuclear weapons, placing the Plaintiff and the United States and its allies like Israel in imminent danger." Compl. ¶ 37.

- "Obama's negotiated treaty will directly threaten the safety of the Plaintiff and others similarly situated by removing sanctions upon companies doing

business with Iran and on the sale of Iranian oil worldwide.  Those sanctions were in place to discourage the development of nuclear weapons by Iran, including to restrict the financing available for Iran to use in building nuclear weapons." Compl. ¶ 38 (footnotes omitted).

- "[T]he Plaintiff as a Christian Jew [and a periodic visitor to Israel] will be personally endangered by [Iran's development of nuclear weapons and] terrorist organizations funded and armed by Iran using the $150 billion in assets, oil sales, and increased commerce who have openly declared their determination to kill all Jews." Compl. ¶¶ 64, 65, 85, 7.

- "As a result, the Plaintiff will also be personally harmed by the increasing rise in anti-Semitism in the Western world, fueled by Western societies increasingly intimidated [sic] by the growing power of terrorist groups and state sponsors of terror like Iran as Iran becomes vastly more powerful and richer and develops nuclear weapons." Compl. ¶ 66.

- "The Plaintiff is being discriminated against in relation to his religious and ethnic status by being endangered with death, physical harm and oppression by the consequences of INARA and the resulting Obama negotiated treaty with Iran." Compl. ¶ 93.

In light of these allegations, the Court issued an Order to Show Cause wherein the Court instructed Plaintiff to demonstrate why he meets the legal test for standing and why this case presents a justiciable case or controversy.  Plaintiff filed an

Expedited Response to Judge's Inquiry [DE 7].  Now, Plaintiff has filed a Request for Emergency Status Conference [DE 21], a memorandum in Opposition to Defendant Congressman Patrick Murphy's Motion for Extension of Time to Respond to Complaint [DE 24], and a Supplement in Opposition to Congressman Murphy's Motion for Extension of Time [DE 25].  Plaintiff is anxious to have his claims resolved because he states that Congress is scheduled to vote on the Iran nuclear treaty tomorrow, September 11, 2015.

In order to accommodate Plaintiff's wish for an expeditious resolution of this matter, and because this Court is convinced that Plaintiff cannot demonstrate standing to pursue these claims, the Court will rule without the benefit of full briefing on the matter.

As the Court explained in the Order to Show Cause, federal district courts are courts of limited jurisdiction.  As a general matter, an action must be dismissed if the Court lacks subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998).  A federal district court "has the obligation to review [on its own motion] whether it has subject matter jurisdiction" and if jurisdiction is found to be lacking, the court cannot proceed, and its sole remaining duty is to state that it lacks jurisdiction and dismiss the case.  *Florida Wildlife Fed'n., Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011).

The jurisdiction of federal courts is defined and limited by Article III of the Constitution.  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  Standing is a jurisdictional

requirement, and a party invoking federal jurisdiction has the burden of establishing it.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (standing is jurisdictional, and dismissal for lack of standing has same effect as dismissal for lack of subject matter jurisdiction).  To show he has standing, Plaintiff must establish three things:

> First [he must have] suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. . . In the context of declaratory and injunctive relief, [the Plaintiff] must demonstrate that [he] has suffered or is threatened with a 'concrete and particularized' legal harm ... coupled with 'a sufficient likelihood that he will again be wronged in a similar way.

*Lujan*, 504 U.S. at 560-61 (1992) (citations and internal quotation marks omitted); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The Supreme Court has also held that, based upon co-extensive prudential standing principles, an alleged injury that is "a generalized grievance shared in substantially equal measure by all or a large class of citizens" does not constitute a specific injury-in-fact that warrants the exercise of a federal court's subject matter jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Thus, "a plaintiff raising only a generally available grievance about government ... and seeking relief that no more directly and tangibly benefits him than it does the public at large ... does not state [an injury-in-fact sufficient to establish] an Article III case or controversy." *Lujan*,

504 U.S. at 573–74; *Allen v. Wright*, 468 U.S. 737, 751 (1984) (noting the general prohibition on a litigant's raising another person's legal rights and the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches of government); *Mass. v. Mellon*, 262 U.S. 447, 488 (1923) (noting that "standing cannot be predicated upon an injury the plaintiff suffers in some indefinite way in common with people generally"); *Tyler v. Judges of Court of Registration*, 179 U.S. 405, 406 (1900) ("Even in a proceeding which he prosecutes for the benefit of the public, the plaintiff must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens.")

The United States Supreme Court insists on strict compliance with the jurisdictional standing requirement and an especially rigorous standing inquiry when reaching the merits of a dispute would force a court to decide the constitutionality of an action taken by one of the other two branches of the Federal Government.  For example, in *Raines v. Byrd*, 521 U.S. 811, 830 (1997), members of Congress brought an action to challenge the constitutionality of the Line Item Veto Act.  The members of Congress asserted that the act violated Article I of the Constitution by unconstitutionally expanding the President's power, violated the requirements of bicameral passage and presentment by granting to the President, acting alone, the authority to cancel and thus repeal provisions of federal law.  The members of Congress alleged they were injured because the act divested them of their constitutional role in the repeal of legislation and altered the constitutional balance

of powers between the Legislative and Executive branches.  *Id*. at 816.  Despite the fact that the act expressly provided any member of Congress, or any individual adversely affected by the act, could bring an action for declaratory and injunctive relief on the ground that any provision of the act violated the constitution, the Court held that the members of Congress did not have a sufficient "personal stake" in the dispute and had not alleged a sufficiently concrete injury to establish Article III standing.

      The assertions made by Plaintiff are similar in kind to those that were raised in *Raines*.  The injuries alleged by Plaintiff are much more generalized and less concrete than those asserted by the members of Congress in *Raines*.  If the members of Congress did not have standing in *Raines,* Plaintiff cannot meet the requirements for establishing standing in this case.

      Thus, "[i]n ... light of [the] overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere," *id*., at 820, the Court finds that Plaintiff has not established that he has standing, or that this case presents a justiciable case or controversy.  Accordingly, this case must be dismissed for lack of subject matter jurisdiction.  *Lujan*, 504 U.S. at 560-61; *Lyons*, 461 U.S. at 111; *Stalley,* 524 F.3d at 1232.  Because the Court concludes that Plaintiff does not have standing, the Court need not consider whether the claims asserted raise "political question" into which this Court should not venture.  Additionally, the Court concludes that granting Plaintiff leave to amend would be futile.

In view of the foregoing, Plaintiff's case is **DISMISSED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of September, 2015.

_____
KENNETH A. MARRA
United States District Judge